# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

## CHARLESTON DIVISION

| | |
|---|---|
| **Evelyn A. Lee**, | ) Civil Action No. 9:09-1878-SB-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| **Jasper County and Andrew Fulghum** | ) |
| **in his individual capacity**, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action has been filed by the Plaintiff, an African American and former employee of the Defendant Jasper County, asserting claims of race discrimination against Defendant Jasper County, and retaliation against both Defendants, in violation of Title VII of the Civil Rights Act of 1964.[1] On June 25, 2012, the Court ordered the Defendants' motion for summary judgment filed

_____

[1]Although Plaintiff's complaint also included a state law claim for defamation against Defendant Fulghum and Fulghum moved for summary judgment on that claim, Plaintiff did not address this claim in her memorandum in opposition to summary judgment (other than referencing the underlying facts of the claim in her background section) and did not refer to it in her conclusion requesting the Court to deny summary judgment on her race and retaliation claims. See generally Plaintiff's Memorandum in Opposition to Summary Judgment, p. 24. Defendants pointed this out in their reply memorandum, arguing therein that Plaintiff had therefore abandoned this claim, and in response Plaintiff did not file any opposition or otherwise dispute that she has abandoned her defamation claim. Therefore, this claim should be deemed abandoned, and dismissed. See Eady v. Veolia Transp. Services, Inc., 609 F.Supp.2d 540, 560-561 (D.S.C. 2009)["The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action."]; accord, Ferdinand-Davenport v. Children's Guild, 742 F.Supp.2d 772,
(continued...)



1

pursuant to Rule 56, Fed.R.Civ.P., be restored to the docket.[2] Plaintiff's memorandum in opposition

to the Defendants' motion, originally filed on January 18, 2011, was also restored to the docket on

June 25, 2012, and the Defendants filed a reply memorandum on July 5, 2012.

On July 30, 2012, the Court held a telephone conference with the parties, granted their

request to be relieved from the mediation deadline, and directed Plaintiff's counsel to address the

issue of whether hearsay testimony from Plaintiff's co-worker and a member of the Jasper County

Council is admissible evidence.[3] On August 9, 2012, Plaintiff's counsel wrote the Court to concede

that she was unable to locate any authority to contradict Defendants' position that the hearsay

testimony of these individuals was not admissible. See Court Docket No. 68. Therefore, that

evidence has not been considered.

The Defendants' motion is now before the Court for disposition.[4]

---

[1](...continued)
777 (D.Md. 2010); <u>Jones v. Family Health Ctr., Inc.</u>, 323 F.Supp.2d 681, 690 (D.S.C. 2003); <u>Mentch v. Eastern Savings Bank, FSB,</u> 949 F.Supp. 1236, 1247 (D.Md. 1997).

[2]The Defendants' motion was originally filed on November 30, 2010; however, on January 27, 2011, Plaintiff's counsel informed the Court that Plaintiff was no longer capable of assisting with decisions concerning her case. Plaintiff's condition necessitated a stay of this case, with the stay being lifted after Plaintiff's son was appointed conservator and authorized to make decisions with respect to the continued prosecution of this case. On June 25, 2012, the Honorable Sol Blatt, United States District Judge, ordered that the case proceed, and Defendants' motion was then restored to the docket.

[3]Plaintiff's deposition had not been taken when she became incapacitated, and there is therefore no direct testimonial evidence from the Plaintiff in support of her claims. As part of Plaintiff's response to the motion for summary judgment, Plaintiff submitted exhibits which included deposition testimony from third parties, some of which is hearsay testimony and which was the subject of the telephone conference of July 30, 2012.

[4]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local
(continued...)



## Background and Evidence[5]

Plaintiff worked for the Defendant Jasper County for over twenty (20) years. <u>See</u> <u>Fulghum Deposition</u>, pp. 38, 109. She worked for the Defendant Andrew Fulghum (white male), the Jasper County Administrator, as his Administrative Assistant from the time that he arrived in 2004 until 2008. <u>See Fulghum Deposition</u>, p. 38; <u>Fulghum Affidavit</u>, ¶ 2. Fulghum testified that Plaintiff was a good employee, that he praised her at staff meetings, that she had very good customer service skills and a very pleasant disposition with co-workers and customers, and that he even put an ad in the newspaper thanking her for her work. <u>See Fulghum Deposition</u>, pp. 39, 43-44. Even so, County Council member Gladys Jones testified that Fulghum had commented to her on more than one occasion that Plaintiff was not really qualified to be the secretary he needed. <u>See</u> <u>Jones Deposition</u>, pp. 65-66.

In spring 2007, Jasper County hired Steve Condrey and Associates, Human Resources Consultants, to conduct a wage and salary study (the "Condrey Study"). <u>See</u> <u>Fulghum Affidavit</u>, ¶ 5. The study provided a mechanism for individuals to appeal the salary assigned by the Condrey Study to their position. <u>See</u> <u>Fulghum Deposition</u>, p. 139. Following the evaluation of Plaintiff's position, Plaintiff believed she should be paid more than she was currently making, and appealed her salary findings in two areas - the listed responsibilities for her position and consideration of her longevity. <u>See</u> <u>Fulghum Deposition</u>, pp. 139, 141. Fulghum asked Condrey Associates to reevaluate

---

[4](...continued)
Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[5]The facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).



its findings to ensure that Plaintiff's longevity was factored into setting the value of her position, but did not recommend a change in Plaintiff's job description or responsibilities.  See <u>Fulghum Deposition</u>, pp. 140-141.  Following this review, Plaintiff's position valuation remained the same.  <u>See Fulghum Deposition</u>, Exhibit 13.

Prior to the end of March 2008, Plaintiff had been working under the Teacher and Employee Retention Incentive Program ("TERI"), a program that allowed a government employee to "retire and begin accumulating [their] retirement benefit[s] on a deferred basis without terminating [their] employment." <u>See Defendants' Memorandum in Support of Summary Judgment</u>, Exhibit A. Employees working under TERI may do so for up to 60 months.  However, at the conclusion of that time they are required to terminate their employment.  <u>Id</u>.  Plaintiff had availed herself of this program, and her TERI was to have concluded around the end of March 2008.  See <u>Fulghum Deposition</u>, p. 165.  Plaintiff sent a letter to Fulghum at the end of February telling him that her employment under TERI would end soon and wanting to know if the County was going to rehire her when her TERI employment terminated.  <u>See Fulghum Deposition</u>, pp. 165-166.  Fulghum testified that he told Plaintiff not to worry, that he would try to work  something out and that they would respond to her.  <u>See Fulghum Deposition</u>, p. 166.

Fulghum set up a meeting for the first of April to discuss Plaintiff being rehired by the County.  At this meeting, Fulghum and the Human Resource Director met with Plaintiff and inquired whether she was interested in another position other than as Fulghum's Administrative Assistant.  <u>See Fulghum Deposition</u>, p. 167.  Fulghum testified that his Administrative Assistant's duties were going to change to include different duties, and that he and Plaintiff discussed her taking another Administrative Assistant position in another department with the same pay  upon the



expiration of her TERI. See Fulghum Deposition, pp. 166-168. Fulghum testified that he believed that Plaintiff would have been an asset to Jasper County in that other position because of the customer service skills needed for that job. See Fulghum Deposition, pp. 167-171.

At that time, Plaintiff's appeal relating to the Condrey Study was still pending. Plaintiff expressed a concern to Fulghum about what her salary would be in the different position in the event that her appeal based on her current position was successful. Although the salary study recommended salaries based upon the job duties of a particular job, Fulghum testified that he promised Plaintiff that, if there was a salary increase as a result of her appeal, it would be honored in the new position. See Fulghum Deposition, p. 168. Fulghum also testified that if Plaintiff did not want the other position, he was prepared to keep her in her current position as his assistant. See Fulghum Deposition, pp. 203-205.

After their meeting, which was on a Wednesday, Fulghum had another meeting set up with the Plaintiff for that Friday. Plaintiff was out sick that day so the meeting never took place. See Fulghum Deposition, p. 203. However, Plaintiff subsequently met with several members of County Council, following which Dr. George Hood, the Chairman of County Council, told Fulghum on the following Monday that Plaintiff was not interested in the new position and wanted to remain in her position as his Administrative Assistant. See Fulghum Deposition, p. 205. Fulghum also learned that Plaintiff had told Council members that county employee Steve Sager (white male) had made a comment about Plaintiff's hair being curly after it had rained, which Plaintiff perceived to have been based upon her race. See Fulghum Deposition, pp. 157, 162-164. Although this comment had apparently been made by Sager approximately a year earlier, Fulghum only learned of this incident in the first or second week of April 2008 from Dr. Hood on the Tuesday after Council's



meeting on Monday, which was the week after he initially met with Plaintiff to discuss the possibility of her moving to the new position. See Fulghum Deposition, pp. 161-162, 204. Gladys Jones, who was Vice Chair of Jasper County Council at the time, testified that the County Council had had several problems with Sager (although she did not identify any racial incidents), and that after Plaintiff complained, Fulghum was given an "ultimatum" to get rid of him.[6] See Jones Deposition, pp. 20, 30, 43, 49.

Sager and Fulghum had a long professional and personal relationship. See Fulghum Deposition, p. 157. Fulghum had worked with Sager in 1997 when Fulghum worked for the Town of Berlin, Maryland, and Sager worked as a state employee with the Maryland State Department of Housing and Economic Development. See Fulghum Deposition, p. 156. When Fulghum moved to a position with the City of Frostburg, Maryland, he hired Sager as a Development Coordinator for the City of Frostburg. See Fulghum Deposition, p. 156. Fulghum then subsequently hired Sager as the Deputy County Administrator when Fulghum came to Jasper County to work. See Fulghum Deposition, p. 157. Sager worked for Jasper County as Deputy County Administrator of Development Services and subsequently as Project Manager. See Fulghum Deposition, pp. 155-156, 162. Sager did eventually resign after Plaintiff made her complaint about him, although not within the time frame given by County Council in the "ultimatum". See Jones Deposition, p. 62.

After the Council's meeting in April, Plaintiff returned to work and remained in her position as Fulghum's Administrative Assistant. See Fulghum Deposition, p. 205; Fulghum Affidavit, ¶ 3. Subsequently, Plaintiff's salary appeal was turned down on June 17, 2008, so she

---

[6]Although County Council did not have the authority to tell Fulghum who to hire or fire, they did have the authority to fire Fulghum. See Jones Deposition, p. 43.

6



remained at the same salary she had been making.  See <u>Fulghum Deposition</u>, Exhibit 13.  Fulghum

testified that Plaintiff was in and out of work when she returned and did not work for long before she

left her employment with the County due to health reasons.  See <u>Fulghum Deposition</u>, pp. 205-206;

<u>see also</u> <u>Frank Deposition</u>, p. 90.  Plaintiff alleges in her Complaint that Fulghum ignored her and

treated her differently when she returned.  See <u>generally,</u> <u>Complaint</u>.  Jones testified that Fulghum

would develop an attitude about not speaking with or ignoring people he had disagreements with, and

that after the Sager incident, she perceived that Fulghum began ignoring Plaintiff and "more or less

bypassing her."  See <u>Jones Deposition</u>, p. 63.  Fellow employee Judith Frank also testified that

Fulghum would not talk to Plaintiff after the Sager incident.  See <u>Frank Deposition</u>, pp. 38-39.

Plaintiff's last day of work was August 6, 2008, and she was thereafter out on short-term disability

leave through November 19, 2008.  See <u>Fulghum Affidavit</u>, ¶ 3.  After Plaintiff's position had been

vacant for about six (6) months Fulghum hired Helen Johnson, who is white, as his new

Administrative Assistant.  Johnson's starting salary was higher than what Plaintiff's had been.  See

<u>Fulghum Deposition</u>, p. 77-78; <u>Fulghum Affidavit</u>, ¶ 7.[7]

       Plaintiff filed a charge of discrimination with the South Carolina Human Affairs

Commission (SCHAC)[8] on May 15, 2008, charging that she had been discriminated against on the

---

[7]Plaintiff's salary was $34,562.00 when she left the Defendant's employ.  See <u>Defendants'</u>
<u>Reply Brief</u>, p. 2; <u>see also</u> <u>Plaintiff's Memorandum in Opposition to Summary Judgment</u>, p. 3;
<u>Fulghum Deposition</u>, pp. 77-78.  Johnson was hired at a salary of $40, 477.00.  See <u>Fulghum</u>
<u>Affidavit</u>, ¶ 7.

[8]As South Carolina is a deferral state, Plaintiff could file her administrative claim with
SCHAC, instead of with the EEOC.  <u>Nelson v. Lockheed Missiles and Space Co.</u>, No. 97-1430, 1997
WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); <u>E.E.O.C. v. Hansa Products, Inc.</u>, 844 F.2d
191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has
a State or local law prohibiting the unlawful employment practice alleged and establishing or
(continued...)



basis of her race, including a retaliation claim. Plaintiff alleged in her administrative charge that she had been denied equal wages from 2007 through May 2008, was harassed and threatened with demotion, involuntarily transferred to another department, that Fulghum ignored her, and that she was told that she would not be allowed to remain in her position after the completion of the TERI program while a white employee was allowed to keep their position. See Fulghum Deposition, Exhibit 5. After receiving a Right to Sue Letter, Plaintiff filed this Complaint in United States District Court asserting claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, and the state law defamation claim discussed in n. 1, supra. With respect to Plaintiff's Title VII claims, Plaintiff alleges in her First Cause of Action that she was denied equal wages to those of similarly situated white employees and was treated disparately, while in her Second Cause of Action Plaintiff alleges that she was unlawfully retaliated against for complaining about her unequal wages and the racially discriminatory remark made to her by Sager. See generally, Complaint.

## Discussion

The Defendants have moved for summary judgment on Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the

---

[8](...continued)
authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.



moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).

## I.

### (Disparate Treatment Claim)

Plaintiff first asserts a race discrimination claim against Jasper County for disparate treatment in violation of Title VII, based on her assertion that she was subjected to racial discrimination when she was paid unequal wages. <u>Complaint</u>, ¶¶ 8, 12. Plaintiff's claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Plaintiff has not offered any direct evidence of race discrimination in the payment of her wages,[9] and the Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether she was discriminated against because of her race under the <u>McDonnell Douglas</u> proof scheme to survive summary judgment.[10]

---

[9]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 943 (1982).

[10]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even if she has presented only circumstantial, or in-direct, evidence of discrimination. However, since neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis, the undersigned has only evaluated Plaintiff's claim using the <u>McDonnell Douglas</u> analysis. <u>See</u> <u>Hopes v. Roche</u>, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing <u>Nagy v. Baltimore Life Ins. Co.</u>, 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).



The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in <u>McDonnell Douglas</u>.  <u>First</u>, Plaintiff must establish a prima facie case of discrimination.  If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her.  <u>Second</u>, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions.  <u>Third</u>, if the Defendant sets forth a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981); <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991).  Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see</u> <u>also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the <u>McDonnell Douglas</u> formula and establish a prima facie case of race discrimination, Defendant contends that Plaintiff must show  (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action with respect to compensation; and (4) that similarly-situated  employees who were not members of her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination.  <u>See</u> <u>Hunter v. Wake County Bd. of Educ.</u>, No. 00-2359, 2010 WL 2164613 at *5 (E.D.N.C. May 25, 2010)(quoting <u>White v. BFI Waste Servs., LLC</u>, 375 F.3d 288, 295 (4th Cir. 2004)).  Plaintiff contends that she can



establish her prima facie case by showing: (1) that she is member of a protected class, and (2) that the job she occupied was similar to higher paying jobs occupied by employees outside the protected class.  Siraj v. Hermitage in N.Va., 51 Fed. Appx. 102, 112-113 (4th Cir. 2002)(quoting Brinkley-Obu v. Hughes Training, 36 F.3d 336, 344 (4th Cir. 1994).

In this case, after careful review and consideration of the arguments and evidence presented, the undersigned concludes that the evidence fails to establish a genuine issue of fact with respect to Plaintiff's prima facie case regardless of which of the above standards is used.[11]  It is undisputed that Plaintiff is a member of a protected class [African-American], and was performing her job satisfactorily.[12]  However, the Defendant argues that the evidence does not show that Plaintiff was subjected to any adverse employment action with respect to her pay or that members outside of her protected class were treated more favorably, and the undersigned agrees.

Plaintiff attempts to meet this element of her prima facie case by arguing in her brief that the person who ultimately succeeded her as Fulghum's Administrative Assistant, Helen Johnson, received a higher salary than Plaintiff had been paid.[13]  See Plaintiff's Memorandum in Opposition

---

[11]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged.  Ennis v. Nat'l Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).  Here, the two prima facie cases proposed by the parties are essentially the same, with Plaintiff simply deleting the satisfactory job performance prong , which is not contested in this case.

[12]Defendants even concede that Plaintiff was an exemplary employee.  See Memorandum in Support of Defendants' Motion for Summary Judgment, p. 10.

[13]Although this is the only claim argued by Plaintiff in her brief, this is not the wage claim referenced in Plaintiff's Complaint, which cites to a dispute going back to 2007, or by Plaintiff in her administrative charge.  Plaintiff's wage claim was originally based on a comparison of how she was treated in her wage study appeal verses how a white employee, Judy Frank, was treated.  See Fulghum Deposition, Exhibit 5.  Defendant argues that Plaintiff "has [now] apparently abandoned (continued...)



to Summary Judgment, pp. 14-17; see also Fulghum Deposition, pp. 38, 77-78.[14] Defendant argues

[13](...continued)
her original argument that '[w]hen [white employee] Judy Frank became aware of the salary discrepancy she brought it to the Administrator's attention [sic] and she received a salary adjustment immediately'"; while Plaintiff did not. See Defendants' Reply Memorandum, p. 2. Plaintiff did not address this issue in her opposition to summary judgment, nor has she responded to Defendants' contention in their Reply Memorandum that she has now abandoned this argument. Therefore, the undersigned has deemed any such claim abandoned. See Eady, 609 F.Supp.2d at 560-561; accord Ferdinand-Davenport, 742 F.Supp.2d at 777; Jones, 323 F.Supp.2d at 690; Mentch, 949 F.Supp. at 1247; see also Burns v. Air Liquide America, L.P., 515 F.Supp.2d 748, 759 n. 9 (S.D.Tex. 2007)[Finding where Plaintiff offered no defense of her unequal pay claims under which her alleged comparators had different supervisors, these undefended claims were regarded as abandoned]. In any event, the evidence reflects that Plaintiff and Frank answered to different supervisors, making them unsuited as comparables, and it is also clear in the evidence that their salaries were set by a third-party's assessment; i.e. the Condrey salary study. See Fulghum Deposition, p. 155; Frank Deposition, p. 34; see Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)[holding that before employees can be viewed as comparable for purposes of invidious discrimination, they must have "dealt with same supervisor, [been] subject to the same standards and engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."]. Therefore, this claim of disparate treatment, even assuming it was still being asserted, is without merit.

[14]The parties have not addressed the fact that Plaintiff's argument concerning Johnson's salary was not an issue raised and exhausted in Plaintiff's EEOC complaint. However, in light of the conflicting case law on whether Plaintiff's failure to exhaust this claim would bar consideration of this claim even in the absence of an assertion of this defense by the Defendants, the undersigned has proceeded, out of an abundance of caution, to discuss this issue on the merits. See Enoch v. Becton, Dickinson & Co., No. 11-3551, 2012 WL 2371049 at n. 12 (D.Md. June 22, 2012), which held

> Although some recent decisions in the Fourth Circuit . . . have described the administrative exhaustion requirement as "jurisdictional," Fourth Circuit precedent is not entirely consistent on this point. See, e.g., Zografov v. V.A. Med. Ctr., 779 F2d 967 (4th Cir. 1985)(stating, in federal employee's Title VII suit, that "failure to exhaust administrative remedies is not a jurisdictional bar for federal employees seeking relief under Title VII"); accord Young v. Nat'l Ctr. for Health Servs. Research, 828 F.2d 235, 238 (4th Cir. 1987); cf. Jones v. Bock, 549 U.S. 199, 212 (2007)("[T]he ususal practice under the Federal Rules is to regard exhaustion as an affirmative defense.").

See also Simmons v. Napolitano, No. 11-0801 (S.D.W.Va. Apr. 12, 2012)[Claim of failure to exhaust EEOC administrative remedies is an affirmative defense]; Monk v. Perry, No. 01-93, 2002 WL
(continued...)



that the new salary paid to Johnson was justified because the job description and requirements changes substantially after Plaintiff left, and that "while many of the collateral duties such as receptionist, assisting with taking tax payments and serving as deputy Clerk to Council have been removed from the purview of the administrative assistant, the new duties Johnson has assumed as the County's project development coordinator more than justifies the roughly $6,000 more than [Plaintiff] receive[d] in salary," and that "the position of administrative assistant held by Johnson is considerably weightier and vastly different than that position held by [Plaintiff]." See Defendants' Reply Memorandum, p. 6.

The evidence reflects that when Plaintiff served as an Administrative Assistant for the Defendant, she performed duties including keeping Fulghum's calendar, collecting monthly reports from departments, ensuring departments submitted their monthly reports, scheduling Fulghum's appointments, arranging rooms for meetings including all the necessary set-ups for the meetings, performing front-line receptionist duties for the building[15], and filling the position of Deputy Clerk to Council. See Fulghum Deposition, pp. 54-60; Frank Deposition, 48, 71-72. Plaintiff contends that although Johnson was paid more when she became Fulghum's Administrative Assistant, she was not required to perform a number of the responsibilities which Plaintiff had handled in that position. See Fulghum Deposition, pp. 45, 54-57, 69-70, 74, 77-79, 84-85, 92-93, 106, 122, 125, 134, 147, 150-

---

[14](...continued)
1397018, * 2 (W.D.Va. June 13, 2002); but see Bannister v. Wal-Mart Stores East, L.P., 843 F.Supp.2d 610, 616 (E.D.N.C. Feb. 14, 2012)["Failure to exhaust administrative remedies by filing an EEOC charge serves to deprive the federal courts of subject matter jurisdiction over such claims."].

[15]At some point after Plaintiff's departure, Fulghum's office moved to another building. See Fulghum Deposition, p. 59.



152. Defendant does not dispute that Johnson was paid approximately $6,000 more annually while not performing a number of tasks which Plaintiff performed. <u>See</u> <u>Defendants' Reply Brief</u>, p. 2. However, Defendant argues that because of the changes in Johnson's responsibilities when she was hired and the additional responsibilities which she assumed, Johnson is not a proper comparator for the Plaintiff. Defendant argues that while Plaintiff was a valuable employee with excellent interpersonal skills, nothing in Plaintiff's list of purported duties involved anything other than traditional secretarial or receptionist duties including some administrative type duties which Johnson is not required to perform, while Johnson was hired to perform numerous additional duties because of her different qualifications. The undersigned agrees.

The evidence reflects that Johnson had been initially employed by the Jasper County Development Board ("the JCDB"), an entity funded by the County but governed by its own board. <u>See</u> <u>Fulghum Affidavit</u>, ¶ 4. Although Johnson held the title "Administrative Assistant", her responsibilities included overseeing "development projects including grant writing and administration, manag[ing] grant compliance procedures, coordinat[ing] meetings with development prospects, coordinat[ing] requests for proposal solicitations and other similar duties." <u>See</u> <u>Fulghum Affidavit</u>, ¶ 4. Johnson's salary in July 2006, which was set by the JCDB, was $27,315. <u>See</u> <u>Fulghum Affidavit</u>, ¶ 4. When the executive director of the JCDB retired, the agency was dissolved and its employees became Jasper County employees. Johnson then went to work in the County's Development Services Division under Rose Dobson, the Deputy County Administrator of Developmental Services, and when Dobson left the County in 2006, Johnson handled the daily affairs of the department until Dobson's replacement was hired. <u>See</u> <u>Fulghum Affidavit</u>, ¶ 4. The evidence also reflects that the Condrey Study in late 2007 resulted in a reclassification of Johnson's position



14

from a grade 12 Administrative Assistant (the same pay grade as the Plaintiff's position) to a grade 14, and Johnson's title was changed to Development Projects Coordinator. See Fulghum Affidavit, ¶ 5; Fulghum Deposition, p. 175. That change in pay grade and a successful appeal through Condrey resulted in a salary of $37,219. See Fulghum Affidavit, ¶ 5.

Fulghum also attests that he knew Johnson had just managed the total renovation of the County's farmer's market, including personally dealing with architects and contractors, and obtaining a $121,000 grant from the United States Department of Agriculture. He also knew that she was involved in writing, coordinating and administering block grants involving sewer and affordable housing projects, as well as a grant from the South Carolina Transportation Infrastructure Bank, and attests that he saw hiring Johnson as an opportunity to both retain a qualified administrative assistant and to employ an individual who had abilities above and beyond someone typically in that position. See Fulghum Affidavit, ¶ 6. In deciding on Johnson's salary, Fulghum took into account her then-current salary of $37,000, the fact that she was going to be dropping back down two pay grades thereby limiting her future income[16], and the fact that he was going to be handing over to her project oversight that was not traditionally within the role of administrative assistant. See Fulghum Affidavit, ¶ 7. Fulghum conferred with Human Resources Director Gloria Lucas, and they agreed that a salary of $40,477 was appropriate. See Fulghum Affidavit, ¶ 7.[17]

_____

[16]The maximum pay for a grade 14 employee is $48,120, while the maximum pay for a grade 12 employee is $43,595. See Fulghum Affidavit, ¶ 7.

[17]It is important to note that Lucas is herself an African American, undercutting Plaintiff's claim that Johnson's approved salary shows that she was discriminated against on the basis of her race. See Fulghum Affidavit, ¶ 9; see also Marlow v. Office of Court Admin. of State of N.Y., 820 F.Supp. 753, 757 (S.D.N.Y. 1993), aff'd, 22 F.3d 1091 (2d Cir. 1994)[Plaintiff's ability to raise an inference of discrimination was hampered where some decision makers were members of same

(continued...)



Johnson is currently responsible for "organizing county-wide grants [including] S.C. Department of Commerce set-a-side grants for two new industries - Daniel Defense and Low County BioMass," as well as "for ensuring that Jasper County is in compliance with the Title VI and ADA mandates required of such grants." <u>See</u> <u>Fulghum Affidavit</u>, ¶ 8. Fulghum also attests that Johnson "played a major role in organizing an outreach effort which enabled Jasper County to avail itself of stimulus monies made available through President Obama's American Recover and Reinvestment Act." <u>See</u> <u>Fulghum Affidavit</u>, ¶ 8.

Plaintiff's own witness, Gladys Jones, testified that Fulghum had commented to her on several occasions that he did not believe Plaintiff had all of the qualifications he needed to be his assistant. <u>See</u> <u>Jones Deposition</u>, pp. 65-66. Plaintiff has provided no evidence to dispute Fulghum's testimony as to Johnson's qualifications and job responsibilities, or to show that her and/or Johnson's race had anything to do with the salary either received, other than her own unsubstantiated speculation that this is the case. <u>Sullivan v. River</u> Valley <u>School District</u>, 197 F.3d 804, 815 (6th Cir. 1999), <u>cert.</u> <u>denied</u>, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]. Plaintiff also has presented no evidence to show that any other employee similarly situated to her from outside of her

---

[17](...continued)
protected group]; <u>accord</u> <u>United States v. Crosby</u> 59 F.3d 1133, 1135 n. 4 (1th Cir. 1995)[Reasoning that where a decision-maker is of the same race as plaintiff, the plaintiff should present evidence to show that the decision-maker held members of his own race to a higher standard of conduct than member of another race]; <u>Rhodes v. Guiberson Oil Tools</u>, 75 F.3d 989, 1002 (5th Cir. 1996)(en banc); <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991)[It is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class ]; <u>DeWitt v. Mecklenburg County</u>, 73 F.Supp.2d 589, 599 (W.D.N.C. 1999)[sex discrimination claim undermined "where a number of the challenged employment decisions were made or implemented by a member of Plaintiff's own gender"].



protected class was treated more favorably. <u>Robinson v. United Parcel Services, Inc.</u>, No. 06-2601, 2007 WL 3484743 at * 4 (N.D.Ga. Nov. 14, 2007)[Finding that Plaintiff had failed to make any showing of a similarly-situated person outside of her class having received more favorable treatment]. Plaintiff's own subjective belief that she was somehow discriminated against in her pay because of her race, no matter how heartfelt, is simply not sufficient to create a genuine issue of fact and avoid summary judgment on her disparate treatment claim. <u>Cook v. CSK Transp. Corp.</u>, 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."]. Rather, in order to proceed on this claim, Plaintiff must present *evidence* sufficient to give rise to a genuine issue of fact that her treatment was based on race discrimination. <u>See</u> <u>Sullivan</u>, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief...."].

   Plaintiff has failed to submit any such evidence, and has therefore failed to create a genuine issue of fact to establish her prima facie case of disparate treatment race discrimination based on an alleged pay disparity. <u>Boden v. U.S. Amada Ltd.</u>, 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]. This cause of action should therefore be dismissed. <u>Gairola v. Virginia Dep't of General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that her disfavorable treatment was the result of discrimination...."]; <u>Hawkins v. Pepsico, Inc.</u>, 203 F.3d 274, 281 (4th Cir. 2000)[affirming the grant of summary judgment to the employer where the employee did not "show that...[the] problems were racial in nature"]; <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary



judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; <u>Rucker v. Greenville Co. Sheriff Dep't.</u>, No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion].

## II.

### (Retaliation Claim)[18]

Plaintiff alleges in her Complaint that, after she complained about pay disparity and Sager making a racial comment, Fulghum treated her with "scorn", refused to communicate with her, and set about a process to force Plaintiff out of her job when her TERI expired and transfer her to another position. <u>Complaint</u>, ¶ ¶ 10, 15. However, in her brief Plaintiff does not make any arguments of retaliation relating to an alleged pay disparity, and only addresses the complaints she made about Sager when discussing this claim. <u>See</u> <u>Plaintiff's Brief</u>, pp. 8-9, 19-23. Therefore, that is the only retaliation argument evaluated in this Report and Recommendation. <u>Eady</u>, 609 F.Supp. 2d at 560-561; <u>Burns</u>, 515 F.Supp.2d at 759, n. 9 [Undefended claims regarded as abandoned].

Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

---

[18]While Plaintiff has sued both Jasper County and Fulghum, individually, as party Defendants in this Cause of Action, Plaintiff's Title VII claim of retaliation against Fulghum is subject to dismissal because there is no individual liability under Title VII. <u>See</u> <u>Lissau v. Southern Food Servs, Inc.</u>, 159 F.3d 177, 180-181 (4th Cir. 1989); <u>Jones v. Sterheimer</u>, No. 09-2242, 2010 WL 2711305 at * 2 (4th Cir. July 6, 2010); <u>Spell v. Maryland Human Relations Com'n</u>, No. 11-0803, 2011 WL 6000862 at *5 (D.Md. Nov. 28, 2011)[Court <i>sua sponte</i> dismissed two individual defendants from action due to no individual liability under Title VII]; <u>Barbosa v. Baxter Healthcare Corp.</u>, No. 00-1546, 2000 WL 1739309 at * 2 (D.Puerto Rico Nov. 15, 2000)[same]. Therefore, Fulghum is entitled to dismissal as a party Defendant even if Plaintiff is otherwise allowed to proceed with this claim against Jasper County.



It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id

Here, as with Plaintiff's disparate treatment claim, Plaintiff has again failed to submit evidence sufficient to give rise to a genuine issue of fact with respect to her prima facie case. Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff engaged in protected activity by complaining to County Council at a meeting on April 17, 2008 that Sager, a



white male, had made a comment about her hair becoming curly after she went out in the rain, which she perceived as having been racially motivated.  See Fulghum Deposition, pp. 162-163, 180-181. Fulghum testified that after the meeting Dr. Hood told him that Plaintiff had complained about Sager's comment, which had been made about a year earlier.  See Fulghum Deposition, pp. 162-164. Plaintiff's appearance before Council occurred around the same time that Plaintiff's TERI retirement was expiring, although *after* Fulghum's meeting with the Plaintiff the previous week.

To meet the "adverse employment action" prong of her prima facie case, Plaintiff alleges in her Complaint that after she reported this comment, she was not offered to be "brought back to work" upon the expiration of her TERI term, and that she was "ignored" by Fulghum.[19] However, with respect to not being "brought back to work", Plaintiff has presented no admissible evidence to support this allegation.  See Letter dated August 9, 2012 (Court Docket No.  68). Fulghum testified that since his Administrative Assistant's duties were going to change, he merely discussed with the Plaintiff the possibility of her taking another administrative assistant position in another department with the same pay  upon the expiration of her TERI, a conversation which the evidence shows occurred *prior* to Plaintiff's meeting with County Council.  See Fulghum Deposition, pp. 162-164, 166-168.[20]  Further, although Fulghum testified that he believed Plaintiff would have

---

[19]There is also testimony in the record about an incident involving a signature on a Federal Express package.  However, there is no dispute that this incident occurred prior to Plaintiff reporting Sager's comment and there is also no evidence of any type of racial discrimination involved in that incident.  Rather, this incident related to Plaintiff's defamation claim, which has been abandoned. See, n. 1, supra.

[20]Since Fulghum testified that he was not even aware of Plaintiff's complaint until *after* he had met with her to discuss the potential of her taking a different Administrative Assistant position; See Fulghum Deposition, pp. 162-163, 204; and Plaintiff has presented no evidence to refute this testimony or to show that Fulghum knew of her conduct prior to their discussion, the evidence also

(continued...)



been an asset to Jasper County in that other position; see Fulghum Deposition, p. 167; he also testified that Plaintiff could remain where she was if she liked, and it is undisputed in the evidence that Plaintiff did not take that other job and returned to her original position at the conclusion of her TERI. See Fulghum Deposition, p. 205; Fulghum Affidavit, ¶ 3. There is no evidence that Plaintiff was not "brought back to work" or allowed to retain her old job after she engaged in protected activity by complaining about Sager's comment, as she alleges, and Fulghum's mere discussion with Plaintiff about a *potential* transfer to another position (which, in any event, occurred prior to Plaintiff even engaging in the alleged protected conduct) is not an adverse employment action. Cf. Farra v. General Motors Corp., 163 F.Supp.2d 894, 911 (S.D.Ohio 2001)[employer's threat to transfer employee to another position was not an adverse employment action where there is no evidence threat was ever consummated]; Hollins v. Atlantic Co., Inc., 188 F.3d 652, 662 (6th Cir. 1999)[threat to discharge or transfer was not an adverse employment action under Title VII, when alleged threat stated a mere possibility]; Berryman v.SuperValu Holdings, Inc., No. 05-169, 2010 WL 1257845 at * 12 (S.D.Ohio Mar. 31, 2010)[employer's mere threat to discipline an employee, without any action taken to consummate those threats, were insufficient]; Helgeson v. American Int'l Group, Inc., 44 F.Supp.2d 1091, 1098 (S.D.Cal. 1999)["A mere threat of termination . . . is not an adverse employment action."]; Meckenberg v. New York City Off-Track Betting, 42 F.Supp.2d 359, 381 n.13 (S.D.N.Y. 1999)[threat to withhold vacation days was not an adverse employment action when

---

[20](...continued)
fails to establish a causal connection (the third prong of the retaliation prima facie case) between her protected conduct and Fulghum's discussion with Plaintiff about her assuming a different position with the County. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"].



vacation days were never, in fact, withheld].

With respect to Plaintiff's claim in her Complaint that she was "ignored" by Fulghum after she reported Sager's comment, both Jones and Frank did testify that they observed Fulghum engaging in conduct which they considered to be "ignoring" or "bypassing" Plaintiff in the office. See Jones Deposition, 63; Frank Deposition, pp. 38-39. However, this testimony, even assumed to be true for purposes of summary judgment, does not, without more, constitute evidence of an adverse employment action. Cf. Munday v. Waste Management of North America, 126 F.3d 239, 243 (4th Cir. 1997)[yelling at employee and telling others to ignore or shun employee did not rise to level of adverse employment action], cert. denied, 522 U.S. 1116 (1998); Bozeman v. Per-Se Technologies, Inc., 456 F.Supp.2d 1282, 1346 (N.D.Ga. 2006)[courts have generally held that shunning or ostracism by co-workers or supervisors is not enough to constitute an adverse employment action]. In her brief, Plaintiff makes the argument that her medical problems were, at least in part, caused or exacerbated by Fulghum's "ignoring" or "bypassing" Plaintiff at work, and that Fulghum's conduct could therefore be considered severe enough to warrant consideration as an adverse employment action.[21] However, Plaintiff has provided no medical or other evidence whatsoever to support this conclusory allegation in her brief, or to create a genuine issue of fact as to whether Plaintiff's medical problems

---

[21]It is important to note that retaliation claims and hostile work environment claims are two separate and distinct claims, and that Plaintiff has not asserted a hostile work environment claim in this case. See Complaint. See also Bozeman v. Per-Se Technologies, Inc., 456 F.Supp.2d 1282, 1344 n. 149 (N.D.Ga. Oct. 16, 2006)["A hostile work environment claim is a separate and distinct cause of action under Title VII, and requires a different analytical approach than a traditional retaliation claim"]; Murphy v Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[finding that Plaintiff's disparate treatment claims, hostile work environment claims, and retaliation claim are all distinct claims and should be alleged in separate counts.]. Therefore, the evidence of Fulghum's alleged treatment of Plaintiff has only been considered under the framework for evaluating a claim of retaliation.



22

were the result of, or caused or exacerbated by, Fulghum's treatment of her.  See <u>Estrella v. Bryant</u>, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment]; <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff]; <u>Gans v. Gray</u>, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; <u>cf.</u> <u>Martin v. Cavalier Hotel Corp.</u>, 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence]; <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].[22]

Therefore, Plaintiff has failed to establish her prima facie case of retaliation, and this cause of action should be dismissed.  <u>Boden</u>, 978 F.Supp. at 659 [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; <u>Hollins</u>, 188 F.3d at 662 [threat to discharge or

---

[22]Further, to the extent Plaintiff may now be trying to argue that Fulghum's conduct forced her to retire, Plaintiff did not assert a constructive discharge claim with respect to her alleged treatment by Fulghum.  See <u>Complaint</u>, Second Cause of Action; <u>See</u> <u>also</u> <u>Fulghum Deposition</u>, Exhibit 5 [showing that plaintiff did not assert a constructive discharge claim in her administrative charge].  Even if she had, the testimony of Frank and Jones standing alone is not sufficient evidence to establish a constructive discharge claim.  <u>Garrett v. Hewlett Packard Co.</u>, 305 F.3d 1210, 1221 (10th Cir. 2002) ["Constructive discharge occurs 'when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign'....The bar is quite high in such cases: a plaintiff must show he had no other choice but to quit."]; <u>see</u> <u>Matvia v. Bald Head Island Mgmt.</u>, 259 F.3d 261, 273 (4th Cir. 2001) [Denying a claim for constructive discharge and noting that "co-worker ostracism [and] denial of management position...would not have compelled the reasonable person to resign.  These incidents might have made the workplace less enjoyable for the reasonable person, but not intolerable."]; <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994) ["Dissatisfaction with work assignments, feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."].



transfer was not an adverse employment action under Title VII, when alleged threat stated a mere possibility]; <u>Bozeman</u>, 456 F.Supp.2d at 1346 [courts have generally held that shunning or ostracism by co-workers or supervisors is not enough to constitute an adverse employment action].

### <u>Conclusion</u>

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 6, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

